**IN THE UNITED STATES DISTRICT COURT
FOR NEW JERSEY**

UNITED STATES OF AMERICA

               Plaintiff

PATRICIA HALEY; COASTAL VILLAGE
CONDOMINIUM ASSOCIATION, INC.; MID
ATLANTIC SURGICAL ASSOCIATES

               Defendant(s)

Civil Action No.

**Complaint for Foreclosure and
Possession**

The UNITED STATES OF AMERICA, by and through its attorneys, Frank J. Martone,

P.C., states the following claims against the defendants:

**PARTIES**

1.     Plaintiff, Department of Housing and Urban Development, is an agency of the

United States of America, (hereinafter referred to as "United States of America" having an office

at 301 NW 6th Street, Suite 200, Oklahoma City, Oklahoma.

2.     Patricia Haley is the owner and mortgagor of the property.

3.     Coastal Village Condominium Association, Inc. holds a lien on the property, which

is subordinate to the plaintiff's mortgage.

4.     Defendants set forth below are holders of docketed judgment(s) and their liens are

subordinate to that of plaintiff, and they are joined because of the judgment that they hold.

(a).

```
                          SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-206563-2009              CASE NUMBER: DC  024059  08
DATE DOCKETED: 09/08/09          DATE OF JUDGMENT IN S.C.P.: 04/13/09
TYPE OF ACTION: CONTRC-REG
VENUE: MONMOUTH
                                               DEBT: $       988.20
                                              COSTS: $        73.76
                                                INT: $        14.72
                                               DCKG: $        10.00
  CREDITOR(S):
       MID ATLANTIC SURGICAL ASSOCIATES
              ATTORNEY: DAVID B WATNER
                        1129 BLOOMFIELD AVE
                        SUITE 208
                        WEST CALDWELL NJ 07006
                        973-244-0061
  DEBTOR(S):
       PATRICIA HALEY
                17 COASTAL DR, NEPTUNE, NJ 07753
              ATTORNEY: PRO SE
                        ---------------
                    *** End of Abstract ***
```

## JURISDICTION AND VENUE

5.      Jurisdiction is based on 28 U.S.C. §1345, which provides that the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer, and upon 12 U.S.C. 1715 *et seq.*

6.      Venue is proper in this district under 28 U.S.C. §1391 and §1396 as the transaction which is the subject matter of this Complaint took place entirely in this district, and the real estate which is the subject of this transaction is located in this district.

## FACTS

7.      The mortgagor, PATRICIA HALEY, prior to the execution of the note and mortgage, was duly advised and counseled regarding the United States Home Equity Conversion Mortgage (HECM) loan program, which program is regulated and set forth in 24 CFR Part 206, *et seq.* and all subsequent handbooks (4330.1 REV-5), mortgage letters, etc. as set forth by the Secretary of the Department of Housing and Urban Development.  The purpose of this program

is set forth in 24 CFR 206.1, and as "set out in section 255(a) of the National Housing Act, Public Law 73-479, 48 STAT. 1246 (12 U.S.C. 1715z-20)"; being further regulated by Handbook 4330.01 Rev. 5 and all subsequent mortgage letters as issued and set forth by the Secretary of the Department of Housing and Urban Development.

8.      On or about December 17, 2003, PATRICIA HALEY, executed and delivered to BNY MORTGAGE COMPANY, LLC, a Home Equity Conversion Adjustable Rate Note, attached hereto as **Exhibit A**, incorporated herein and made a part hereof as if fully written herein.  (Note). Under paragraph 2, of the Note, titled: **Borrower(s) Promise to Pay: Interest**, the mortgagor, Patricia Haley, agreed to the following, to wit:

> In return for amounts to be advanced by Lender to a maximum principal amount of $420,000.00, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated December 17, 2003 (Loan Agreement), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of Three and Forty-One Hundredths percent (3.410%) per year until the full amount of principal has been paid.  The interest rate may change in accordance with Paragraph 5 of this Note.  Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

9.      Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, the mortgagor, Patricia Haley executed and delivered to BNY MORTGAGE COMPANY, LLC, a Home Equity Conversion Mortgage, a copy of which is attached hereto as **Exhibit B**, incorporated herein and made a part hereof as if fully written herein (Mortgage).  Said Mortgage was duly recorded on February 26, 2004 in Book OR-8335, at Page 535, MONMOUTH County Clerk's/Register's Office, New Jersey.  Said real estate is within the jurisdictional limits of the Court.  Said mortgage was not a purchase money mortgage.

10. The mortgaged premises are described as follows:

All that certain tract or parcel of land and premises situate in the Borough of NEPTUNE CITY, County of MONMOUTH and State of New Jersey being more particularly described as follows:

See attached **Exhibit C**.

Tax Lot 19.17, Block 89, commonly known as 17 Coastal Drive, Unit 32, Building B, Neptune City, New Jersey 07753.

The legal description attached hereto is the same legal description contained in the recorded mortgage.  However, the undivided percentage interest in the Common Elements was inadvertently set forth as "undivided 6.29%" and set forth "undivided 1.57%".  The legal description is hereby reformed to correct the scrivener's error to correctly read "undivided 1.57%", as more particularly described on the attached Exhibit "C".

11. On January 12, 2004 by assignment bearing that date, BNY MORTGAGE COMPANY, LLC assigned said Note and Mortgage to SEATTLE MORTGAGE which Assignment was recorded in the Clerk's/Register's office of MONMOUTH County, New Jersey on February 26, 2004, in Book OR-8335 of Assignments of Mortgage for said County, at Page 625.  See **Exhibit D**.

12. On June 27, 2007 by assignment bearing that date, SEATTLE MORTGAGE COMPANY assigned said Note and Mortgage to BANK OF AMERICA, N.A. which Assignment was recorded in the Clerk's/Register's office of MONMOUTH County, New Jersey on July 11, 2007, in Book OR-8664 of Assignments of Mortgage for said County, at Page 7171.  See **Exhibit E**.

13. On August 31, 2011 by assignment bearing that date, BANK OF AMERICA, N.A. assigned said Note and Mortgage to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT which Assignment was recorded in the Clerk's/Register's office of MONMOUTH County, New Jersey on December 15, 2011, in Book OR-8922 of Assignments of Mortgage for said County, at Page 5478.  See **Exhibit F**.

14.     The mortgagor PATRICIA HALEY vacated the subject premises on or about April 6, 2015.

15.     The Mortgage provide, at paragraph 9, titled **Grounds for Acceleration of Debt**, "(b)" Due and Payable with Secretary Approval.  Lender may require immediate payment in full of all sums secured by this Security Instrument upon approval of the Secretary if: (i)  The property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or (ii) For a period of longer than twelve (12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or (iii) An obligation of the Borrower under this Security Instrument is not performed.     PATRICIA HALEY was the only borrower on the Note and Mortgage.

16.     The subject property has not been occupied by the borrower since at least April 6, 2015 and the borrower has therefore not occupied the property for a period of at least twelve (12) consecutive months as required by the terms of the Mortgage.  Accordingly, defendant is in breach of the provisions of the mortgage requiring occupancy.

17.     The United States Department of Housing and Urban Development ("HUD") has approved proceeding with foreclosure due to the borrower's failure to occupy the property as required by the terms of the Mortgage.

18.     Demand for payment of all sums due under the Note and Mortgage was made, and payment has not been paid.

19.     The Defendant(s), Patricia Haley is indebted to the United States of America on behalf of the Secretary of Housing and Urban Development and there remains due the following sums to the Plaintiff.  (See Statement of Account, attached hereto as **Exhibit G**, incorporated herein and made a part hereof as if fully written herein.)

| | | |
|---|---|---|
| (a) | Unpaid Principal | $234,838.10 |
| (b) | Interest accrued in accordance with Adjustable rate note/mortgage: at the annual rate of 3.720% per annum | $ 118,710.02 |
| (c) | MIP Advances for tax payments and insurance Set forth in 24 CFR 206.27 & 206.103 *et seq.* and HUD Handbook 4330.1 (13-14) | $ 23,800.54 |
| (d) | Service Fee set forth in HUD Handbook 4330.1 (13-15) | $ 4,375.00 |
| | Total (as of June 27, 2018) | $381,723.66 |

20.     Said Note and Mortgage contained an agreement that if any of the installments of taxes, assessments, water rents, charges, impositions or liens, levied upon the premises should remain in default, the mortgagee may pay the same, and such amount paid shall be a lien on said lands, added to the amount of the mortgage debt and secured by this mortgage.

21.     During the course of this action, the plaintiff may be obligated to make advances for the payment of taxes, insurance premiums, and necessary expenses and curative payments to preserve the security, and such sums advanced under the terms of the Note, together with interest, are to be added to the amount due on the mortgage debt and secured by the plaintiff's mortgage.

22.     On April 6, 2015, default occurred. The entire principal and interest, insurance and taxes and other charges became due and payable on plaintiff's mortgage and has not been paid. Plaintiff has elected that the whole of the unpaid principal and interest shall now be due.

23.     The following instruments or liens of record in the Office of the Clerk/Register of MONMOUTH County, New Jersey which affect or may affect the premises described herein all of which instruments or liens are subordinate to the lien of the mortgage set forth above.

23(a).   Home Equity Conversion Second Mortgage from PATRICIA HALEY to the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, dated December 17, 2003, recorded February 26, 2004, in Mortgage Book OR-8335, at Page 568 in the maximum principal amount of $420,000.00.   Plaintiff is also the holder of the Home Equity Conversion Second Mortgage, however, plaintiff wishes to report the lien only and does not wish to foreclose this mortgage at this time, attached hereto as **Exhibit H.**

23(b).   A Claim of Lien dated September 22, 2016 by COASTAL VILLAGE CONDOMINIUM ASSOCIATION, INC. against PATRICIA HALEY in the amount of $6,735.00, recorded October 11, 2016 in Book OR-9191, at Page 2552.   The lien of plaintiff's mortgage being foreclosed herein is subject to the limited priority granted by statue (N.J.S.A. 46:8B-21) to this lien.

24.   Any interest or lien which any of the defendants herein has or claims to have in or upon the said mortgaged premises or some part thereof is subject to the lien of plaintiff's mortgage.

## COUNT ONE

### Foreclosure on the Mortgaged Premises

25.   Plaintiff repeats the allegations contained in Paragraphs 1 through 24 of the Complaint and makes same as part hereof as if repeated at length.

26.   As a result of PATRICIA HALEY's default under the mortgage, Plaintiff is entitled to immediate payment of the entire unpaid balance due and owing under the loan documents, with interest accruing on such at the rate provided for under the mortgage, together with reasonable attorneys' fees and other charges as provided for under the mortgage.

WHEREFORE, plaintiff prays for judgment as follows:

(a)   Fixing the amount due on its mortgage.

(b)   Barring and foreclosing the defendants and each of them of all equity of redemption in and to said lands.

7

    (c)      Directing that the plaintiff be paid the amount due on its mortgage with interest and costs.

    (d)      Adjudging that said lands be sold according to law to satisfy the amount due plaintiff.

    (e)      Appointing a receiver of rents, issues and profits of said lands.

    (f)      Such other and further relief as the Court deems just and equitable.

## SECOND COUNT

### Possession of Mortgaged Premises

27.     Plaintiff repeats any and all allegations of Paragraphs 1 through 26 of the Complaint and makes same a part hereof as if repeated at length.

28.     By reason of the default in the terms of the mortgage referred to in the First Count of the Complaint, and by reason of the terms of the mortgage, plaintiff is entitled to possession of the premises described herein.

29.     Defendant(s), PATRICIA HALEY, and/or its tenants or assigns, are now in possession of the premises described herein and have at all times deprived plaintiff of possession of said premises.

WHEREFORE, plaintiff prays for judgment as follows:

    (a)      That plaintiff or the purchaser at the foreclosure sale recovers possession of the mortgaged premises against said defendants or anyone holding under them.

    (b)      Damages for mesne profits.

    (c)      Costs.

    (d)      Such other and further relief as the Court deems just and equitable.

## THIRD COUNT

1.      Plaintiff repeats any and all allegations of Paragraphs 1 through 29 of the Complaint and makes same a part hereof as if repeated at length.

2.      Inadvertently and due to scrivener's error, the legal description attached to plaintiff's recorded mortgage set forth the undivided percentage interest in the Common Elements as "undivided 6.29%" and should set forth "undivided 1.57%". The legal description is hereby reformed to correct the scrivener's error in the notation for the undivided percentage interest in the Common Elements to correctly read "undivided 1.57%".

**WHEREFORE**, plaintiff demands judgment on the Third Count of this Complaint reforming the legal description to correct the scrivener's error and correctly set forth the undivided percentage interest in the Common Elements to read "undivided 1.57%", as more particularly described on Exhibit C.

## DESIGNATION OF TRIAL COUNSEL

Frank J. Martone, Esq. and Dennis P. Uhlmann, Jr., Esq. are hereby designated as trial counsels for the Plaintiff, UNITED STATES OF AMERICA.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned attorney certifies that there are no other actions pending or contemplated at this time related to the subject matter of this action.

## CERTIFICATION PURSUANT TO NEW JERSEY COURT R. 4:5-1 AND R. 4:64-1

In accordance with Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any action pending arbitration proceeding. There is no other action or arbitration proceeding contemplated, nor is there any other party who should be joined in this action.

In accordance with Rule 4:64-1(a), I hereby further certify that a title search of the public record has been received and reviewed for the purpose of identifying any lien holders and/or other person and entities with an interest in the property that is subject to foreclosure. The effective date of the title search is June 26, 2018.

**CERTIFICATION OF DILIGENT INQUIRY TO BE ANNEXED TO RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS PURSUANT TO NEW JERSEY COURT RULE 1:5-6(c)(1)(E) AND RULES 4:64-1(a)(2) and (3)**

Frank J. Martone, Esq., of full age, hereby certifies and says:

1.      I communicated by e-mail with the following named employee(s) of THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, who stated that he/she personally reviewed the documents submitted to the Court and that he/she confirmed their accuracy.

2.      The name, title and responsibilities of the plaintiff's employee(s) with whom I communicated are: GAYLENE FOX, PARALEGAL SPECIALIST, OFFICE OF COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; OVERSEE FORECLOSURE FILES.

3.      Based on my communication with the above-named employee(s) of plaintiff, as well as my own inspection of the loan information supplied by plaintiff and other diligent inquiry, I execute this certification to comply with the requirements of Rule 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2) and (3).

4.      I am aware that I have continuing obligation under Rule 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertions proffered by plaintiff in any court filings or documents in this case.

Respectfully submitted this _____19th_____ day of _____September_____, 20_18_____

By:      _____
Frank J. Martone, Esq.
Attorney for Plaintiff
Frank J. Martone, P.C.
1455 Broad Street
Bloomfield, NJ 07003
973-473-3000
973-473-3243 – Fax
firm@martonelaw.com

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**DEFENDANTS**
PATRICIA HALEY; COASTAL VILLAGE CONDOMINIUM ASSOCIATON, INC., MID ATLANTIC SURGICAL ASSOCIATES

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   MONMOUTH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FRANK J. MARTON, P.C. - 973-473-3000
Frank J. Martone, Esq.
1455 Broad Street, Bloomfield, NJ 07003

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                *and One Box for Defendant)*

|                                | PTF | DEF |                                             | PTF | DEF |
|--------------------------------|-----|-----|---------------------------------------------|-----|-----|
| Citizen of This State          | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State       | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--|--------------------|------------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. SEC. 1345 UNITED STATES OF AMERICA AS PLAINTIFF
Brief description of cause:
TO FORECLOSE A REVERSE MORTGAGE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
9/19/2018

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# EXHIBIT "A"

## ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

DECEMBER 17, 2003

FHA Case Number: ███████

**PROPERTY ADDRESS**

17 COASTAL DRIVE
NEPTUNE CITY, NEW JERSEY 07753    TRUE AND CERTIFIED COPY
MONMOUTH COUNTY

### 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means BNY Mortgage Company LLC and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated DECEMBER 17, 2003 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on DECEMBER 1, 2076. Interest will be charged on unpaid principal at the rate of THREE AND FORTY-ONE HUNDREDTHS percent (3.410%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

**(B) Place**
Payment shall be made at 440 Mamaroneck Avenue, Harrison, New York 10528 or any such other place as Lender may designate in writing by notice to Borrower.

**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

### 5. INTEREST RATE CHANGES

**(A) Change Date**
The interest rate may change on the first day of JANUARY, 2005 and on that day of each succeeding year. Change Date means each date on which the interest rate could change.

**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of two and one tenths percentage points (2.1%) to the Current Index. Subject to the limit(s) stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

-1-

**(D) Limits on Interest Rate Changes**

The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note..

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

  (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

  (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

  (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

  (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

  (iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

X _____

PATRICIA HALEY (Borrower)

12-17-03
Date

-3-

# EXHIBIT "B"

## MORTGAGE
## (HOME EQUITY CONVERSION)

Record and Return to:

BNY Mortgage Company LLC
Alliance Mortgage Company/Final Docs
8201 Cypress Plaza Drive, Ste 100, Jacksonville, FL 32256



FHA Case Number:

---

**STATE OF NEW JERSEY**        **MORTGAGE**

THIS MORTGAGE ("Security Instrument") is given on DECEMBER 17, 2003. The Mortgagor is PATRICIA HALEY whose address is 17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY 07753 ("Borrower"). This Security Instrument is given to BNY Mortgage Company LLC, which is organized and existing under the laws of the State of New York, and whose principal office address is 440 Mamaroneck Avenue, Harrison, New York 10528 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353 I et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $420,000.00. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in MONMOUTH County, New Jersey:

The real property is located at the address 17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY 07753, in the county of MONMOUTH, state of NEW JERSEY, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

-1-

M. CLAIRE FRENCH
COUNTY CLERK
MONMOUTH COUNTY
NEW JERSEY
INSTRUMENT NUMBER 2004044917
RECORDED ON Feb 26, 2004 11:29:26 AM
BOOK:OR-8335 PAGE:535
Total Pages: 9

COUNTY RECORDING FEES $63.00
DEDICATED TRUST FUND $2.00
COMMISSION
NJ PRESERVATION $45.00
ACCOUNT
TOTAL $110.00

## EXHIBIT A

Exhibit A to the Mortgage given on DECEMBER 17, 2003, by PATRICIA HALEY ("Borrower") to BNY Mortgage
Company LLC ("Lender").  The Property is located in the county of MONMOUTH, state of NEW JERSEY, described
as follows:

### Description of Property

## LAWYERS TITLE INSURANCE CORPORATION
## RICHMOND, VIRGINIA

### SCHEDULE A – LEGAL DESCRIPTION

Commitment No. ███████

All the real property located in the Borough, of Neptune City, County of Monmouth, State of New Jersey and more
particularly described as follows:

Unit 32 Building B situated in Coastal Village Condominium together with an undivided 6.29% in the Common Elements of
said Condominium, as same may be adjusted in the future as allowed by the Master Deed for Coastal Village
Condominium.  Made under the provisions of and is subject to the New Jersey Condominium Act (N.J.S.A. 46:B.1
et seq) and the Planned Real Estate Development Full Disclosure Act (N.J.S.A. 22A:21, et seq.), as amended and
any applicable regulations adopted under either law.  Made in accordance with the terms, limitations, conditions,
covenants, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for
Coastal Village Condominium dated August 11, 1995 and recorded August 11, 1995 in the Office of the Monmouth
County Clerk in Deed Book 5433 at page 0155, et seq., as same may now or hereafter be lawfully amended and/or
supplemented.

NOTE FOR INFORMATION:  The land referred to in this Commitment is commonly known as Lot(s) 19.17 in Block 89 on
the Tax Map of the Borough of Neptune City, County of Monmouth.

## CONDOMINIUM RIDER

**FHA Case Number:** █████████

THIS CONDOMINIUM RIDER is made on DECEMBER 17, 2003, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to BNY Mortgage Company LLC, a New York Corporation, ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY  07753

The Property Address includes a unit, together with an undivided interest in the common elements of, a condominium project known as:

### COSTAL VILLAGE CONDOMINIUM

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owner's Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

A.  So long as the Owner's Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender and the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay Borrower's allocated share of the common expenses or assessments and charges imposed by the owner's Association, as provided in the condominium documents.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

*Patricia Haley*
PATRICIA HALEY (Borrower)

Case 3:18-cv-14053-FLW-TJB   Document 1-3   Filed 09/20/18   Page 5 of 10 PageID: 20

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

-2-

**6. Inspection.** Lender or its agent may enter, on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
   **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
   (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

   **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
   (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

   (ii)   For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

   (iii)  An obligation of the Borrower under this Security Instrument is not performed.

   **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.

   **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
   (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

   (ii)   Pay the balance in full; or

   (iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

   (iv)   Provide the Lender with a deed in lieu of foreclosure.

-3-

(e)  Trusts.  Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph.  A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) Mortgage Not Insured.  Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. No Deficiency Judgements.  Borrower shall have no personal liability for payment of the debt secured by this Security Instrument.  Lender may enforce the debt only through sale of the Property.  Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed.  If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full.  This right applies even after foreclosure proceedings are instituted.  To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full.  Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:(I) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. First Lien Status
(a) Modification.  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a).  If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense.  If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents.  If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) Tax Deferral Programs.  Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) Prior Liens.  Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this

-4-

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

  (i)    This Security Instrument is assigned to the Secretary; or

  (ii)   The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

  (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

  (ii)   Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

-5-

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of THREE AND FORTY-ONE HUNDREDTHS percent (3.410%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new index and index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on JANUARY 1, 2005, and on the first day of ___X___ and on that day of each succeeding year, or _____ the first day of each succeeding month (Change Date) until the loan is repaid in full.

-6-

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

    __X__    Annually Adjusting Variable Rate Feature - The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

    _____    Monthly Adjusting Variable Rate Feature.,

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es).]

    __X__ Condominium Rider        ___ Planned Unit Development Rider

    ___ Shared Appreciation Rider        ___ Other -

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

    KATHLEEN A. YOUNG
    NOTARY PUBLIC OF NEW JERSEY
Witnesses:     MY COMMISSION EXPIRES SEPT. 18, 2004

Signature    *Patricia Haley*
    PATRICIA HALEY (Borrower)

**Notary Acknowledgement**

State of New Jersey
County of *Monmouth*
I *Kathleen A. Young* ,a Notary Public in and for said county and state do hereby certify that PATRICIA HALEY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, on DECEMBER 17, 2003.

    KATHLEEN A. YOUNG
Signature:    NOTARY PUBLIC OF NEW JERSEY    [SEAL]
My commission expires:    MY COMMISSION EXPIRES SEPT. 18, 2004

-7-

# EXHIBIT "C"

# LEGAL DESCRIPTION

All the real property located in the Borough, of Neptune City, County of Monmouth, State of New Jersey and more particularly described as follows:

Unit 32 Building B situated in Coastal Village Condominium together with an undivided 1.57 % in the Common Elements of said Condominium, as same may be adjusted in the future as allowed by the Master Deed for Coastal Village Condominium. Made under the provisions of and is subject to the New Jersey Condominium Act (N.J.S.A. 46:B.1 et seq) and the Planned Real Estate Development Full Disclosure Act (N.J.S.A. 22A:21, et seq.), as amended and any applicable regulations adopted under either law. Made in accordance with the terms, limitations, conditions, covenants, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for Coastal Village Condominium dated August 11, 1995 and recorded August 11, 1995 in the Office of the Monmouth County Clerk in Deed Book 5433 at page 0155, et seq,, as same may now or hereafter be lawfully amended and/or supplemented.

NOTE FOR INFORMATION: The land referred to in this Commitment is commonly known as Lot(s) 19.17 in Block 89 on the Tax Map of the Borough of Neptune City, County of Monmouth.

# EXHIBIT "D"

2

RECORDING REQUESTED BY
BNY Mortgage Company LLC

AND WHEN RECORDED MAIL TO:
BNY Mortgage Company LLC
Alliance Mortgage Company/Final Docs
8201 Cypress Plaza Drive, Ste. 100, Jacksonville, FL 32256
(Valley Nat.Title)

FHA Case Number:

Title Order Number:
FHA Originator No:

[JAN 2 0 2004]

Space above this line for recorder's use

## CORPORATION ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

SEATTLE MORTGAGE, whose address is 190 QUEEN ANNE AVENUE NORTH, SUITE 500, SEATTLE, WASHINGTON 98109

all beneficial interest under that Certain Deed of Trust dated DECEMBER 17, 2003 executed by PATRICIA HALEY, Borrower, to BNY Mortgage Company

LLC, a New York Corporation, Lender, and recorded concurrently herewith as Instrument Number _____ on _____

_____ in book _____, page _____, of Official Records in the County

Recorder's office of MONMOUTH County, NEW JERSEY, describing land therein as:

See Legal Description Attached

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

STATE OF NEW ~~JERSEY~~ York               ss:
COUNTY OF _Westchester_

On _January 12, 2004_ before me,
_Maura Boyan_

a Notary Public in and for said County and State, personally appeared
SUSAN NETROSIO, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or
entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal

Signature _Maura Boy_

BNY Mortgage Company LLC
a New York Corporation

_Susan Netrosio_
By: SUSAN NETROSIO
Title: ASSISTANT VICE PRESIDENT

MAURA C. BOYAN
Notary Public, State of New York
Registration #01BO6044869
Qualified in Westchester County
My Commission Expires July 17, 20__

TOTAL                          $90.00
NJ PRESERVATION                $15.00
ACCOUNT
DEDICATED TRUST FUND          $2.00
COMMISSION
COUNTY RECORDING              $33.00
FEES
Total Pages: 2
PAGE1625
BOOK=OR=8335
11:29:28 AM
Feb 26, 2004
RECORDED ON
200404915
INSTRUMENT NUMBER
NEW JERSEY
MONMOUTH COUNTY
COUNTY CLERK
M. CLAIRE FRENCH

## LAWYERS TITLE INSURANCE CORPORATION
## RICHMOND, VIRGINIA

### SCHEDULE A – LEGAL DESCRIPTION

Commitment No

All the real property located in the Borough, of Neptune City, County of Monmouth, State of New Jersey and more particularly described as follows:

Unit 32 Building B situated in Coastal Village Condominium together with an undivided 6.29% in the Common Elements of said Condominium, as same may be adjusted in the future as allowed by the Master Deed for Coastal Village Condominium. Made under the provisions of and is subject to the New Jersey Condominium Act (N.J.S.A. 46:8.1 et seq) and the Planned Real Estate Development Full Disclosure Act (N.J.S.A. 22A:21, et seq.), as amended and any applicable regulations adopted under either law. Made in accordance with the terms, limitations, conditions, covenants, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for Coastal Village Condominium dated August 11, 1995 and recorded August 11, 1995 in the Office of the Monmouth County Clerk in Deed Book 5433 at page 0155, et seq., as same may now or hereafter be lawfully amended and/or supplemented.

NOTE FOR INFORMATION: The land referred to in this Commitment is commonly known as Lot(s) 19.17 in Block 89 on the Tax Map of the Borough of Neptune City, County of Monmouth.

2

# EXHIBIT "E"



This Space for Recorder's Use Only                          JUL 09 2007

Document Prepared By:
Ron Meharg,
When Recorded Return To:
DOCX
1111 Alderman Drive
Suite 350
Alpharetta, GA 30005

CRef#:07/29/2007-PR
Date:06/29/2007-Prie

Property Address:
17 COASTAL DRIVE
NEPTUNE CITY, NJ 07753

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged, Seattle Mortgage Company, whose address is 190 Queen Anne Ave. North, Suite 100, Seattle, WA 98109, does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over and deliver unto Bank of America, N.A., whose address is 190 Queen Anne Ave. North, Suite 400, Seattle, WA 98109, the following described mortgage, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such mortgage.

Original Borrower(s): Patricia Haley
Original Mortgagee: BNY Mortgage Company, L.L.C.
Date of Mortgage: 12/17/2003          Loan Amount: $420,000.00
Recording Date: 02/26/2004   Book: OR-8335   Page: 535
and recorded in the official records of the County of Monmouth, State of New Jersey affecting Real Property and more particularly described on said Mortgage referred to herein.

IN WITNESS WHEREOF, the undersigned has caused these presents to be executed on this date of 06/27/2007.

Seattle Mortgage Company

Linda Green
Vice President

State of GA
County of Fulton

On this date of 06/27/2007, before me, the undersigned authority, a Notary Public duly commissioned, qualified and acting within and for the aforementioned State and County, personally appeared the within named Linda Green, known to me (or identified to me on the basis of satisfactory evidence) that he or she is the Vice President of Seattle Mortgage Company, and was duly authorized in his or her respective capacity to execute the foregoing instrument for and in the name and in behalf of said corporation and that said corporation executed the same, and further stated and acknowledged that they had so signed, executed and delivered said instrument for the consideration, uses and purposes therein mentioned and set forth.

Witness my hand and official seal on the date hereinabove set forth.

Notary Public:

RAJ PARMAR
Notary Public - Georgia
Fulton County
My Comm. Expires Feb. 26, 2010

M CLAIRE FRENCH-CTY CLK
MONMOUTH COUNTY,NJ
INSTRUMENT NUMBER
2007095212
RECORDED ON
Jul 11, 2007
12:54:33 PM
BOOK-OR-8664
PAGE 7171
Total Pages: 1
COUNTY RECORDING
FEES                $40.00
TOTAL PAID          $40.00

# EXHIBIT "F"

Inst. # 2011115527 - Page 1 of 4

## Monmouth County Document Summary Sheet

|  |  |
|---|---|
| | **Transaction Identification Number** ▆▆▆ ▆▆▆ |
| MONMOUTH COUNTY CLERK | **Return Address** *(for recorded documents)* |
| PO BOX 1251 | RELIABLE DOCUMENT RETRIEVAL |
| MARKET YARD | 2111 20TH STREET |
| FREEHOLD NJ 07728 | SACRAMENTO, CA 95818 |

| Official Use Only | | |
|---|---|---|
| | **Submission Date** *(mm/dd/yyyy)* | 12/15/2011 |
| | **No. of Pages** *(excluding Summary Sheet)* | 2 |
| M CLAIRE FRENCH, CTY CLK | **Recording Fee** *(excluding transfer tax)* | $50.00 |
| MONMOUTH COUNTY, NJ | **Realty Transfer Tax** | $0.00 |
| INSTRUMENT NUMBER | **Total Amount** | $50.00 |
| 2011115527 | **Document Type** ASSIGNMENT/MORTGAGE | |
| RECORDED ON | | |
| Dec 15, 2011 | | |
| 3:43:57 PM | **Electronic Recordation Level** | |
| BOOK:OR-8922 PAGE:5478 | L2 - Level 2 (With Images) | |
| Total Pages: 4 | | |
| COUNTY RECORDING FEES $50.00 | **Municipal Codes** | |
| TOTAL PAID $50.00 | NEPTUNE CITY | 3601 |
| | **Bar Code(s)** | |

| **Additional Information (Official Use Only)** |
|---|
| |

***DO NOT REMOVE THIS PAGE.***
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Inst. # 2011115527 - Page 2 of 4

## Monmouth County Document Summary Sheet

| | | | | | | |
|---|---|---|---|---|---|---|
| | **Type** | ASSIGNMENT/MORTGAGE | | | | |
| | **Consideration** | | | | | |
| | **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) | | | | |
| | **Document Date** | 08/31/2011 | | | | |
| | **Reference Info** | | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | | **Recorded/File Date** |
| | OR | 8335 | 535 | 2004044917 | | |
| **ASSIGNMENT/M ORTGAGE** | **MORTGAGOR** | **Name** | | **Address** | | |
| | | BANK OF AMERICA NA | | | | |
| | | PATRICIA HALEY | | | | |
| | **ASSIGNEE** | **Name** | | **Address** | | |
| | | SECRETARY OF HOUSING AND URBAN DEVELOPMENT | | | | |
| | **Parcel Info** | | | | | |
| | **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | | |

*DO NOT REMOVE THIS PAGE.*
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 2 of 2

Inst. # 2011115527 - Page 3 of 4

When Recorded Mail to:
BANK OF AMERICA
ATTN: Isabel Osorno
WA1-501-15-22
P.O. BOX 3977
SEATTLE, WA 98124-2477

SPACE ABOVE THIS LINE FOR RECORDER'S USE

FHA CASE NO. ███████                                  LOAN NO ███████

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the current mortgagee and undersigned, BANK OF AMERICA, N.A. 800 5th Avenue, Seattle, WA 98104, hereby grants, assigns and transfers to

The Secretary of Housing and Urban Development
Whose address is 451 Seventh Street, S.W., Washington, DC 20410

All beneficial interest under that certain Mortgage dated December 17, 2003 in which Patricia Haley, having an address of 17 Coastal Drive, Neptune City, New Jersey 07753 is Mortgagor, and BNY Mortgage Company LLC, whose address is 440 Mamaroneck Avenue, Harrison, New York 10528, which is organized and existing under the laws of the State of New York, is Mortgagee, recorded on February 26, 2004, under Instrument No. 2004044917, in Book No. OR8335, Page No. 535, with a maximum principal amount of $420,000.00 in the Official Records of Monmouth County, New Jersey.

The real property situated in said county described as follows:
See Exhibit "A" attached
Having an address of: 17 Coastal Drive, Neptune City, New Jersey 07753

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to be accrued under said Mortgage.

Section 275: The assignment is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bona fide obligation.

Date: 8/31, 2011                              BANK OF AMERICA N.A.

                                              DEBRA TAYLOR, VICE PRESIDENT

State of Washington   )
                      )   SS:
County of King        )

On 8/31, 2011 before me, the undersigned personally appeared DEBRA TAYLOR, VICE PRESIDENT, BANK OF AMERICA personally known to me or provided to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Joseph C. Roy, Notary Public
in and for the State of Washington
My commission expires: 7/31/13

Notary Public
State of Washington
JOSEPH C ROY
MY COMMISSION EXPIRES
July 31, 2013

Inst. # 2011115527 - Page 4 of 4

## LAWYERS TITLE INSURANCE CORPORATION
### RICHMOND, VIRGINIA

SCHEDULE A – LEGAL DESCRIPTION

Commitment No. ███████

All the real property located in the Borough, of Neptune City, County of Monmouth, State of New Jersey and more particularly described as follows:

Unit 32 Building B situated in Coastal Village Condominium together with an undivided 6.29% in the Common Elements of said Condominium, as same may be adjusted in the future as allowed by the Master Deed for Coastal Village Condominium. Made under the provisions of and is subject to the New Jersey Condominium Act (N.J.S.A. 46:8.1 et seq) and the Planned Real Estate Development Full Disclosure Act (N.J.S.A. 2PA:21, et seq.), as amended and any applicable regulations adopted under either law. Made in accordance with the terms, limitations, conditions, covenants, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for Coastal Village Condominium dated August 11, 1995 and recorded August 11, 1995 in the Office of the Monmouth County Clerk in Deed Book 5433 at page 0155, et seq., as same may now or hereafter be lawfully amended and/or supplemented.

NOTE FOR INFORMATION: The land referred to in this Commitment is commonly known as Lot(s) 19.17 in Block 89 on the Tax Map of the Borough of Neptune City, County of Monmouth.

# EXHIBIT "G"

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
|---|

| To HUD/OFFICE OF GENERAL COUNSEL | 1. FHA Case Number ▮▮▮ | 2. Account Number ▮▮▮ |
|---|---|---|
| | 3. Mortgagor/Owner PATRICIA HALEY | 4. Social Security Number ▮▮▮ |
| | 5. Co-Mortgagor | 6. Social Security Number |

| 7. Name of original mortgagor if different from above | 8. Property Address 17 COASTAL DRIVE NEPTUNE CITY, NJ 07753 |
|---|---|

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance $234,838.10 | Escrow Balance | Interest Rate 3.720 | Term |
|---|---|---|---|---|
| Type of mortgage HECM | Last payment applied | Date | Date of oldest unpaid Interest Installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
|---|---|
| Principal | $234,838.10 |
| Interest | $118,710.02 |
| Tax Escrow Required | |
| Service Charge | $4,375.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $23,800.54 |
| Interest on Advances | |
| Total to Bring Current as of: 06/27/2018 | $381,723.66 |
| Current Monthly Payment Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment See back of page if mortgage is 235 | |

## Part 3. Payoff Information

| Principal Balance | $234,838.10 |
|---|---|
| Interest Due | $118,710.02 |
| Service Charge | $4,375.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $23,800.54 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of: 06/27/2018 | $381,723.66 |
| Per Diem Service Charge | |
| Per Diem Interest | $44.13 |

| Prepared by ALYSSA WARSTLER | Title CASH ANALYST | Date 06/27/2018 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by KAYE JAMES | Title CASH MANAGEMENT | Date 06/27/2018 |
|---|---|---|

# EXHIBIT "H"

## SECOND MORTGAGE
## (HOME EQUITY CONVERSION)

Record and Return to:

BNY Mortgage Company LLC
Alliance Mortgage Company/Final Docs
8201 Cypress Plaza Drive, Ste 100, Jacksonville, FL 32256

FHA Case Number: ███████

JAN 2 0 2004

**STATE OF NEW JERSEY**                                      **MORTGAGE**

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on  DECEMBER 17, 2003.  The Mortgagor is PATRICIA HALEY, whose address is 17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY 07753 ("Borrower").  The beneficiary is the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410 ("Lender" or "Secretary").  Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument  ("Loan Agreement").  The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument "Second Note").  This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note;  (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.  This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch.  353 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law.  The maximum principal amount secured by this Security Instrument is $420,000.00.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in  MONMOUTH  County, New Jersey:

The real property is located at the address  17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY 07753,  in the county of  MONMOUTH, state of NEW JERSEY, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument").  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.
2. Payment of Property Charges.  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.  Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

-1-

**EXHIBIT A**

Exhibit A to the Mortgage given on DECEMBER 17, 2003, by PATRICIA HALEY ("Borrower") to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410, ("Lender" or "Secretary"). The Property is located in the county of MONMOUTH, state of NEW JERSEY, described as follows:

Description of Property

## LAWYERS TITLE INSURANCE CORPORATION
## RICHMOND, VIRGINIA

SCHEDULE A – LEGAL DESCRIPTION

Commitment No ████

All the real property located in the Borough, of Neptune City, County of Monmouth, State of New Jersey and more particularly described as follows:

Unit 32 Building B situated in Coastal Village Condominium together with an undivided 6.29% in the Common Elements of said Condominium, as same may be adjusted in the future as allowed by the Master Deed for Coastal Village Condominium. Made under the provisions of and is subject to the New Jersey Condominium Act (N.J.S.A. 46:B.1 et seq) and the Planned Real Estate Development Full Disclosure Act (N.J.S.A. 22A:21, et seq.), as amended and any applicable regulations adopted under either law. Made in accordance with the terms, limitations, conditions, covenents, restrictions, easements, agreements and other provisions set forth in that certain Master Deed for Coastal Village Condominium dated August 11, 1995 and recorded August 11, 1995 in the Office of the Monmouth County Clerk in Deed Book 5433 at page 0155, et seq., as same may now or hereafter be lawfully amended and/or supplemented.

NOTE FOR INFORMATION: The land referred to in this Commitment is commonly known as Lot(s) 19.17 in Block 89 on the Tax Map of the Borough of Neptune City, County of Monmouth.

# CONDOMINIUM RIDER

**FHA Case Number:** ▉▉▉▉▉▉

THIS CONDOMINIUM RIDER is made on DECEMBER 17, 2003, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument or "Second Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Second Note ("Note") to the Secretary of Housing and Urban Development ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**17 COASTAL DRIVE, NEPTUNE CITY, NEW JERSEY 07753**

The Property Address includes a unit, together with an undivided interest in the common elements of, a condominium project known as:

**COSTAL VILLAGE CONDOMINIUM**

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owner's Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owner's Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender and the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance on the Property is deemed satisfied to the extent that the required coverage is provided by the Owner's Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay Borrower's allocated share of the common expenses or assessments and charges imposed by the owner's Association, as provided in the condominium documents.

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

X _Patricia Haley_
PATRICIA HALEY (Borrower)

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a

-2-

purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary to the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require payment in full of all sums secured by this Security Instrument if:

   (i)    A Borrower dies and the Property is not the Principal residence of at least one surviving Borrower; or

   (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or a beneficial interest in a trust with such an interest in the Property).

   (iii)   The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

   (iv)   For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

   (v)    An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in subparagraph (a) of this Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclose until Borrower has had thirty (30) days after notice to either:

   (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

   (ii)   Pay the balance in full; or

   (iii)   Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

   (iv)   Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgements.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed.

-3-

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately proceeding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Second Lien Status**

　**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

　**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

　**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to First Security Instrument.**

　**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower has also executed a First Note and First Security Instrument.

　**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:
　　(i)　The First Security Instrument is assigned to the Secretary; or
　　(ii)　The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary. If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

　**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

-4-

M. CLAIRE FRENCH
COUNTY CLERK
MONMOUTH COUNTY
NEW JERSEY

INSTRUMENT NUMBER
2004064918
RECORDED ON
Feb 26, 2004
11:29:27 AM
BOOK:OR-8335
PAGE:568
Total Pages: 9

| COUNTY RECORDING FEES | $63.00 |
| DEDICATED TRUST FUND | $2.00 |
| COMMISSION | |
| NJ PRESERVATION | $45.00 |
| ACCOUNT | |
| TOTAL | $110.00 |

(i)   Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii)   Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) No Duty of the Secretary.   The Secretary has no duty to the holder of the of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) Restrictions on Enforcement.   Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14.   Forbearance by Lender Not a Waiver.   Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.   Successors and Assigns Bound; Joint and Several Liability.   Borrower may not assign any rights or obligations under this Security Instrument or under the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16.   Notices.   Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.   The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.   Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.   Governing Law; Severability.   This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.   In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision.   To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18.   Borrower's Copy.   Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

19.   Assignment of Rents.   Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.   Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.   However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.   This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:   (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

-5-

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of THREE AND FORTY-ONE HUNDREDTHS percent (3.410%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new index and index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on JANUARY 1, 2005, and on the first day of _____X_____ and on that day of each succeeding year, or _____ the first day of each succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

    __X__    Annually Adjusting Variable Rate Feature - The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

    _____    Monthly Adjusting Variable Rate Feature..

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

-6-

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.

[Check applicable box(es).]

   X  Condominium Rider            _  Planned Unit Development Rider

  _  Shared Appreciation Rider          _  Other -

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

                    KATHLEEN A. YOUNG
                  NOTARY PUBLIC OF NEW JERSEY
             MY COMMISSION EXPIRES SEPT 18, 2004

X   *Patricia Haley*
    PATRICIA HALEY (Borrower)


**Notary Acknowledgement**

State of New Jersey
County of Monmouth

I, Kathleen A. Young, a Notary Public in and for said county and state do hereby certify that PATRICIA HALEY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, on DECEMBER 17, 2003.
                    KATHLEEN A. YOUNG
Signature:               NOTARY PUBLIC OF NEW JERSEY
             MY COMMISSION EXPIRES SEPT 18, 2004    [SEAL]
My commission expires:

-7-